1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THE ESTATE OF CLAYTON ROY ZAHN, by and through KEZAWIN BOYD, Personal Representative of the Estate, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY OF KENT, a municipal corporation, *et al.*,<br><br>Defendants. | Case No. C14-1065RSM<br><br>ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION TO DISMISS |

## I.      INTRODUCTION

This matter comes before the Court on Defendants' Motion for Summary Judgment Regarding Use of Force, Dkt. #12, and Plaintiffs' Motion to Dismiss Affirmative Defense of Qualified Immunity, Dkt. #29. Defendants City of Kent and Officer Jason Bishop request that the Court dismiss all of Plaintiffs' claims based solely on the absence of liability; Plaintiffs Kezawin Boyd, acting for the Estate of Clayton Roy Zahn, and Bette Jean Manning request that the Court dismiss the Affirmative Defense of Qualified Immunity asserted by Defendants. Dkt. ## 12, 29. For the reasons set forth below, the Court DENIES both Motions.

## II.     BACKGROUND

This case primarily concerns the events of July 15, 2011, when several members of the Kent Police Department were called to an apparent domestic disturbance at a private residence in Kent.  Dkt. #3 at 4; Dkt. #7 at 3.

Officer Jason Bishop, a police officer employed by the City of Kent, was on patrol that evening wearing his police uniform and riding in a marked police vehicle with another officer. Dkt. #14 at 3.  Officer Bishop was informed by the 911 dispatcher that there was a domestic dispute in progress at a nearby residence, and that Clayton Zahn, a 37-year-old Native American male was armed with a knife and arguing with his brother-in-law.  *Id.*  Officer Bishop also learned from dispatch or his police computer that Mr. Zahn had been drinking, that there were several other people at the house, and that "there was a gun in the house, but it was reportedly 'put away.'"  *Id.*

When Officer Bishop and the other officer arrived in the area, they parked a few houses away and Officer Bishop armed himself with a "beanbag shotgun" from the police vehicle.  *Id.* at 4.   The parties agree that a beanbag shotgun is "a twelve-gauge shotgun loaded with… beanbag round[s]," which consist of "lead shot contained in a cloth sack."  Dkt. #3 at 4; Dkt. #7 at 4.  The parties also agree that a beanbag shotgun can cause serious injury and possibly death, with the risk of death significantly higher if the point of impact is the head.  *Id.*; *see also* Dkt. #14 at 4.

Officer Bishop approached the residence on foot, heard voices, and saw that the garage door was open.  Dkt. #14 at 4.  Several other officers arrived on the scene.  *See, e.g.,* Dkt. #15 at 4.  Officer Bishop saw a man inside the garage, later identified as Mr. Zahn, who he believed fit the description of the suspect armed with a knife provided by dispatch.  Dkt. #14 at 4.

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION TO DISMISS  - 2

Officer Bishop and/or other officers commanded Mr. Zahn to show his hands and exit the garage. *Id.* at 6. Officer Bishop asserts that Mr. Zahn was slow to respond to commands and appeared drunk. *Id.* At this time, Officer Bishop had the beanbag shotgun drawn at "low ready," pointing toward the ground. Dkt. #14 at 5. Other Kent Police officers, including Sergeant Thomas Clark, had their pistols drawn and at "low ready." Dkt. #15 at 4.

Mr. Zahn raised his hands, which were empty. Dkt. #14 at 6. Officer Bishop asserts that he believed Mr. Zahn could still be concealing a knife or other weapon somewhere on his person. *Id.* When Mr. Zahn reached the end of the garage, officers commanded him to keep his hands extended and lie face down on the ground. *Id.*

What happened next is in dispute. Officer Bishop has declared that "[i]nstead of complying with these commands, Mr. Zahn shouted 'fuck you!' at us, and suddenly moved his right hand and arm toward the small of his back." *Id.* Sergeant Clark has also declared that Mr. Zahn moved his right hand to the small of his back. Dkt. #15 at 4. Plaintiff Kezawin Boyd, also present at the scene, testified in deposition that she heard Mr. Zahn yell these words to the police, but has stated in a declaration that she "did not see [Mr. Zahn] put his hands down during this incident." Dkt. #32 at 6; Dkt. #21 at 2. However, Ms. Boyd has also agreed in her deposition that she turned away from her brother at some point and she "saw the flash of the bean bag round being fired." Dkt. #32 at 6. The beanbag shotgun was fired by Officer Bishop after or at the same time Sergeant Clark shouted "beanbag him." Dkt. #15 at 5.

Also in dispute is the proximity of Mr. Zahn to other individuals. Officer Bishop states that there might have been two other family members in the garage with Mr. Zahn (Dkt. #14 at 4), but Ms. Kezawin Boyd's declaration implies that she and her husband were ordered out of

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION TO DISMISS  - 3

the garage, down the driveway, and into the custody of the police *prior* to Mr. Zahn yelling at the police and being shot.  *See* Dkt. #21 at 2.

Mr. Zahn was hit by the beanbag round in the stomach area or abdomen.  *See* Dkt. #15 at 5; Dkt. #3 at 6.  Mr. Zahn was transported to a hospital where he underwent surgery and was discharged five days later.  Dkt. #3 at 7.  Mr. Zahn died nearly two years later, on April 4, 2013, allegedly as a result of this incident.  *Id.* at 9.

Plaintiffs filed their initial Complaint on July 13, 2014.  *See* Dkt. #1.  Plaintiffs' causes of action are for "Violation of the Fourth Amendment Prohibition against the Use of Deadly and Unreasonable Force," "Destruction of the Mother-Son Relationship," "Municipal Liability of the City of Kent," "Wrongful Death State Law Claim," and "Personal Injury Survival Claim under State Law."  Dkt. #3 at 9-16.

### III.    DISCUSSION

**A.  Legal Standard for Summary Judgment**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).   Material facts are those which might affect the outcome of the suit under governing law.  *Anderson*, 477 U.S. at 248.  In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial."  *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party.  *Anderson*, 477 U.S. at 255; *Sullivan v.*

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION TO DISMISS  - 4

*U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004).  The Court must draw all reasonable inferences in favor of the non-moving party.  *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994).  However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 251.

## B. Reasonableness Inquiry

Excessive-force claims can be dismissed on summary judgment if, after resolving all factual disputes in favor of the plaintiffs, a court concludes that the force was objectively reasonable under the circumstances.  *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994). "Where the objective reasonableness of an officer's conduct turns on disputed issues of material fact," it is "a question of fact best resolved by a jury."  *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011) (citing *Wilkins v. City of Oakland*, 350 F.3d 949, 955 (9th Cir. 2003). "[O]nly in the absence of material disputes is [the objective reasonableness of an officer's conduct] a pure question of law."  *Id.* (citing *Scott v. Harris*, 550 U.S. 372, 381 n.8, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007)).

Claims that police officers have used excessive force are analyzed under the Fourth Amendment and its reasonableness standard.  *Graham v. Connor*, 490 U.S. 386, 395 (1989). The Court must ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them."  *Id.* at 397.  This inquiry "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION TO DISMISS  - 5

interests' against the countervailing governmental interests at stake." *Id*. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Glenn v. Washington County*, 673 F.3d 864, 871, (9th Cir. 2011) (citing *Graham*, 490 U.S. at 396-97). "Reasonableness therefore must be judged from the perspective of a reasonable officer on the scene, 'rather than with the 20/20 vision of hindsight.'" *Id.* (citing *Graham*, 490 U.S. at 396).

The analysis involves three steps. "First, we must assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted." *Glenn*, 673 F.3d at 871 (citing *Espinosa v. City and County of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010)) (internal quotation marks omitted). "[E]ven where some force is justified, the amount actually used may be excessive." *Id.* (citing *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002)). "Second, we evaluate the government's interest in the use of force." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396 109 S.Ct. 1865 (1989)). In evaluating the government's interest in the use of force, The Court looks to: "(1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight," however, the inquiry is not limited to these factors. *Young v. Cnty. of Los Angeles*, 655 F.3d 1156, 1163 (9th Cir. 2011) (citing *Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003)). "Finally, 'we balance the gravity of the intrusion on the individual against the government's need for that intrusion.'" *Glenn*, 673 F.3d at 871 (citing *Miller*, 340 F.3d at 964).

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION TO DISMISS  - 6

Defendants argue that "[i]n other cases where a suspect reached for his waist area as if to draw a weapon, federal courts have found that even deadly force was reasonable," citing *Thompson v. Hubbard*, 257 F.3d 896, 899 (8th Cir. 2001) ("An officer is not constitutionally required to wait until he sets eyes upon the weapon before employing deadly force to protect himself against a fleeing suspect who turns and moves as though to draw a gun.") and *Estate of Moppin-Buckskin v. City of Oakland*, No. C 08-04328 CW, 2010 U.S. Dist. LEXIS 2148, *13, 2010 WL 147976 (N.D. Cal. Jan. 12, 2010) (reasonable to use deadly force against suspect who fled traffic stop, failed to follow orders, dropped his hands, and "made a movement toward his waist area as though reaching for a weapon"). Dkt. #12 at 13.

In considering the above legal standards, the Court concludes that the objective reasonableness of Officer Bishop's conduct turns on disputed issues of material fact, and thus summary judgment is inappropriate in this case. *See Torres*, 648 F.3d at 1123. In stepping through the test outlined in *Glenn v. Washington County*, it is clear to the Court that the force used by Officer Bishop was significant—a beanbag shotgun, although a "less lethal" device, is still potentially lethal. However, in moving to the next step, the government's interest in the use of this force may have been great or small depending on unresolved material facts. Specifically, when the Court looks to "whether the suspect posed an immediate threat to the safety of the officers or others," *Young*, 655 F.3d at 1163, the Court finds itself being asked to weigh the declarations and deposition testimony of Officer Bishop and Sergeant Clark against the word of Ms. Boyd, also an eyewitness. However, in ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane, supra*.

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION TO DISMISS  - 7

Defendants argue that Ms. Boyd was not in a position to see Mr. Zahn suddenly reach for the small of his back, and that Ms. Boyd's declaration directly contradicts her prior deposition testimony. *See* Dkt. #31 at 2-3.  Defendants rely solely on the following exchanges in her deposition:

> Q. Where were you looking when you noticed the flash of light?
> A. Straight ahead. I didn't know -- it was just so fast and so sudden. I heard the shot and I fringed -- I cringed. And I just looked forward. That's all.
> Q. When you say you were looking forward, what way were you facing? Out towards the street or out towards your house?
> A. Towards the street area away from -- my back towards the house.
> Q. So your back was to your brother at the time you saw the flash of light?
> A. Right, but immediately after I turned and looked for him.
> Q. And what did you see then?
> A. He was folding and going down.

Dkt. # 21 at 11–12.

> Q. I think you told me your back was to your brother at the moment the bean bag round was fired; is that correct?
> A. Correct.
> Q. So is it also correct that you didn't see what your brother was doing at the moment the bean bag round was fired?
> A. I didn't see –
> MR. MUENSTER: Object to the form of the question. Go ahead and answer.
> THE WITNESS: I didn't see.

*Id.* at 15.

> Q. I do just have a few follow-up questions.
> A. Okay.
> Q. I think you just testified that you estimate it took about ten seconds from the time you turned around and told your brother to obey the officers until you saw the flash of the bean bag round being fired; is that right?
> A. Yes.
> Q. And after you had told your brother to obey the officers and then you turned away from him, you heard him say FU?
> A. Right, yes.

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION TO DISMISS  - 8

Dkt. #32 at 6.  However, in the same deposition, Ms. Boyd also testified that "I saw a light from the right side of me behind a tree-type area, and of course, the boom."  Dkt. #21 at 11.  When asked if she knew "if he still had his hands up or had lowered his hands" at the moment the bean bag round was fired, Ms. Boyd testified "I know he had his hands up because I was coming out, and he was in front of me.  So I'm coming out, and so I'm still coming out, and I believe he still had his hands up."  *Id.* at 15-16.

The Court finds this testimony vague.  It is unclear whether Ms. Boyd is turning toward or away from Mr. Zahn when the bean bag round is fired, or is partially turned.  Even if Ms. Boyd turned away from Mr. Zahn at the time he said "fuck you" to the officers, this does not establish that she remained turned away from him at the time he allegedly made a sudden movement to the small of his back, or was only partially turned so as to see the flash of light from her right side.  On the other hand, the Court also finds Ms. Boyd's testimony that Mr. Zahn had his hands up "in front of me" as she is "still coming out," and her declared statement that she did not see Mr. Zahn "put his hands down during this incident," potentially ambiguous.  However, the Court finds it reasonable to infer from the submitted materials that Ms. Boyd is stating that she actually saw Mr. Zahn not lower his hands at the time the bean bag round was fired, contrary to the testimony of Officer Bishop and Sergeant Clark, and must draw this inference in favor of the Plaintiff for purposes of this Motion.  Given this, the Court finds a question of material fact precludes a finding that the force used by Defendants was reasonable as a matter of law.

Even if the Court were not to find that the above creates a question of material fact, the Court believes there are several questions of fact in this case properly answered by a jury,

1    including the proximity of Mr. Zahn to other individuals at the time the bean bag round was

2    fired.[1]

3    **C.  Officer Bishop's Qualified Immunity Defense[2]**

4
         Qualified immunity is "an entitlement not to stand trial or face the other burdens of
5
     litigation." *Saucier v. Katz*, 533 U.S. 194, 200, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)
6
     (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985)),
7
     *abrogated in part on other grounds by Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 817-
8
     18, 172 L. Ed. 2d 565 (2009). Accordingly, we must resolve "immunity questions at the earliest
9
     possible stage in litigation." *Torres*, 648 F.3d at 1123 (citing *Pearson*, 129 S. Ct. at 815).
10
         An officer will be denied qualified immunity in a § 1983 action only if (1) the facts
11
     alleged, taken in the light most favorable to the party asserting injury, show that the officer's
12
     conduct violated a constitutional right, and (2) the right at issue was clearly established at the
13
     time of the incident such that a reasonable officer would have understood her conduct to be
14
     unlawful in that situation.  *Torres*, 648 F.3d at 1123 (citing *Saucier*, 533 U.S. at 201-02; *Liberal*
15
     *v. Estrada*, 632 F.3d 1064, 1076 (9th Cir. 2011)).  Either question may be addressed first, and if
16
     the answer to either is "no," then the officers cannot be held liable for damages.  *Glenn*, 673
17
     F.3d at 870 (citing *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565
18
     (2009).
19
         The Court has already found that issues of material fact exist as to the reasonableness of
20
     the force used by Officer Bishop, and thus whether Mr. Zahn's Fourth Amendment rights were
21
     violated.  These same issues of material fact, specifically whether Mr. Zahn posed an immediate
22

23

24

25

26

27   _____
     [1] This is not to mention the other legal and factual issues not before the Court at this time, such as whether the
     beanbag round caused Mr. Zahn's death more than a year later. *See* Dkt. #12 at 2 n.1.
28   [2] The parties agree that no state-law claims are asserted against Officer Bishop, Dkt. # 23 at 24, thus the Court will
     analyze this issue under federal law.

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION TO DISMISS  - 10

threat to the safety of others, are also material to a proper determination of the reasonableness of Officer Bishop's belief in the legality of his actions, and thus they preclude summary judgment dismissal of Plaintiffs' claims against Officer Bishop under a qualified immunity defense. *See Glenn*, 673 F.3d at 870 n.7.

Accordingly, the Court will also deny Plaintiffs' Motion to Dismiss the Affirmative Defense of Qualified Immunity, Dkt. #29. In addition to the issues of material fact, The Court is not convinced by Plaintiffs' argument that it should deviate from accepted precedent because Officer Bishop may be indemnified by the City of Kent.

**D. Plaintiff's State-law Claims**

Defendants argue that Plaintiffs' state-law claims, a survival action under RCW 4.20.046 and 4.20.060, and a wrongful-death action under RCW 4.20.010, should be dismissed "because both causes of action require the death be wrongful," and because "[a]n officer's use of deadly force that is reasonable under the Fourth Amendment is lawful—not wrongful—and, therefore, will not support either a survival claim or a wrongful-death claim under Washington law." Dkt. #12 at 17-18. However, because the Court has already concluded that issues of material fact exist as to Plaintiffs' Fourth Amendment claim, these same factual issues preclude summary judgment dismissal of Plaintiffs' state-law claims.

## IV. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

1) Defendants' Motion for Summary Judgment Regarding Use of Force, Dkt. #12, is DENIED.

2)  Plaintiffs' Motion to Dismiss Affirmative Defense of Qualified Immunity, Dkt. #29,

is DENIED.


DATED this 4 day of January 2016.


RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION TO DISMISS  - 12